FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2020 DEC 28  PM 1: 11

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

UNITED STATES OF AMERICA

v.

AVINASH SINGH

CASE No.  6:20-cr- 165-Orl-78LRH
18 U.S.C. § 1343
18 U.S.C. § 1957

## INFORMATION

The United States Attorney charges:

## COUNTS ONE AND TWO
### (Wire Fraud)

### A. Introduction

At times material to this Information:

1.     AVINASH SINGH operated and controlled Highrise Advantage, LLC ("Highrise"), and he maintained and controlled accounts at financial institutions, including JPMorgan Chase Bank and Wells Fargo Bank, financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

### B. Scheme and Artifice

2.     Beginning on an unknown date, but beginning at least as early as in or about February 2013, and through and including in or about September 2020, in the Middle District of Florida, and elsewhere, the defendant,

**AVINASH SINGH,**

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C. Manner and Means of the Scheme

3.    The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.    It was part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did unlawfully devise and execute a scheme and artifice to defraud investors, either directly or through feeder pools, of money and property by means of materially false and fraudulent pretenses, representations and promises.

b.    It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did obtain money, and attempt to obtain money, by soliciting individuals to provide funds that defendant AVINASH SINGH claimed would be pooled with other investors to invest in retail foreign currency contracts ("forex") through Highrise.

c.    It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did obtain money, and attempt to obtain money, by soliciting feeder pools to provide to Highrise some of the

2

funds that the feeder pools had received from their own investors, so that defendant AVINASH SINGH and Highrise could invest those funds in forex.

        d.     It was a further part of the scheme and artifice to defraud that the investment in forex with Highrise offered by defendant AVINASH SINGH was not a legitimate investment, but was a "Ponzi" scheme by which money from later investors would be paid to earlier investors.

        e.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did solicit investors, either directly or through feeder pools, to invest in forex with Highrise, by means of false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

        (1)     False claims that defendant AVINASH SINGH had a proven track record of success as a forex trader;

        (2)     False claims that defendant AVINASH SINGH would use the funds provided to him and Highrise to invest in forex;

        (3)     False claims that funds invested with defendant AVINASH SINGH  and Highrise would start trading on forex on the next trading day; and,

(4)    False claims that defendant AVINASH SINGH and Highrise would "guarantee" that investors and feeder pools would not lose any funds for any trading losses.

f.    It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did prepare, and caused to be prepared, documents and other materials that contained some of the false claims described in paragraph e above, including, but not limited to, a "Terms and Conditions" form that was provided to investors to complete.

g.    It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did send, and caused to be sent, to investors and feeder pools by interstate wire, the documents referenced in paragraph f above.

h.    It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did provide investors and feeder pools with falsified trading statements that claimed to show that their funds had been invested in forex and that large trading profits had been earned from forex trades conducted by defendant AVINASH SINGH, and Highrise, when in truth and in fact, as the defendant then and there well knew, defendant AVINASH SINGH and Highrise had not invested all of the funds

4

that they received and the trading profits set out on the trading statements were fabricated and did not reflect actual trading activity.

i.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did fail to invest all of the funds in forex as had been promised, but would use significant portions of the funds received from investors and feeder pools for his personal benefit or to pay amounts owed to other investors or feeder pools.

j.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did use interstate wires to communicate with investors and feeder pools by electronic mail and telephone.

k.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did cause investors, either directly or through feeder pools, to send money to invest by use of interstate wires.

l.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did fail to register Highrise as a commodity pool operator with the Commodity Futures Trading Commission.

m.     It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did receive at least $57 million

from over 1,100 investors, either directly or through feeder pools, as a result of devising and executing the scheme and artifice.

n.      It was a further part of the scheme and artifice to defraud that defendant AVINASH SINGH would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

### D. Interstate Wires

4.      On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### AVINASH SINGH,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| ONE | April 28, 2017 | An interstate email from Highrise's email account to P.C. that falsely represented a profit for Highrise for April 2017, which email was processed by a server located outside of Florida |

| TWO | July 30, 2019 | An interstate email from Highrise's email account to P.C. that falsely represented a profit for Highrise for July 2019, which email was processed by a server located outside of Florida |
|---|---|---|

All in violation of 18 U.S.C. § 1343.

## COUNTS THREE AND FOUR
### (Illegal Monetary Transactions)

1.    The United States Attorney hereby realleges paragraphs one and three of Count One of this Information and incorporates such paragraphs by this reference as though fully set forth herein.

2.    On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### AVINASH SINGH,

did knowingly engage and attempt to engage in the monetary transactions described below in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property was, in fact, derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that such transaction involved property and funds that were the proceeds obtained from a criminal offense, as follows:

7

| Count | Date | Transaction |
|-------|------|-------------|
| THREE | April 25, 2018 | Transfer in and affecting interstate commerce of funds in the amount of $65,230.52 by and through JPMorgan Chase Bank originating in the Middle District of Florida to an account for American Express |
| FOUR | September 4, 2020 | Transfer in and affecting interstate commerce of funds in the amount of $920,598.65 by and through Wells Fargo Bank originating in the Middle District of Florida to an account for a settlement agent for the closing of a sale of real estate located at 9070 Mayfair Pointe Rd, Orlando, FL 32827 |

In violation of 18 U.S.C. §§ 1957 and 2.

### FORFEITURE

1.      The allegations contained in Counts One through Four of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1),

8

any property, real or personal, involved in such offense, or any property traceable to such property.

4.     The property to be forfeited includes, but is not limited to, the following: the real property located at 9070 Mayfair Pointe Drive, Orlando, FL 32827 and an order of forfeiture for at least the $57 million obtained from the offenses, which represents the proceeds of the offenses.

5.     If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

MARIA CHAPA LOPEZ
United States Attorney

By: _____

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

By: _____

Amanda L. Riedel
Assistant United States Attorney
Deputy Chief, Criminal Division

10